Raymond Pleasant MANEES *v.* STATE of Arkansas

CR 81-23                                    622 S.W. 2d 166

Supreme Court of Arkansas
Opinion delivered October 12, 1981
[Rehearing denied November 9, 1981.]

70

*William R. Simpson, Jr.,* Public Defender, and *Sandra Trawick Berry,* Deputy Public Defender, by: *Deborah Sallings,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. On November 10, 1980, a jury convicted appellant of aggravated robbery, rape and theft of property. He was sentenced to 50 years for aggravated robbery, 50 years for rape and 20 years for theft of property, all of which were to run concurrently.

The only point argued on appeal is whether the trial court erred in refusing to permit a defense witness to testify about the prosecuting witness's prior sexual conduct.

For the reasons stated below we disagree with the contention of appellant and affirm the conviction and sentences.

The facts reveal that the appellant and the prosecuting witness met in the fall of 1978 when her car was involved in

an accident and the appellant was driving the tow truck dispatched to the scene. The appellant testified that after he had towed her car, he took her to her home in his car and there had sexual relations with her. She denies this, testifying that she called a friend from the Exxon station and the friend took her home. The prosecuting witness's roommate testified that she had gone to the station and had taken the prosecuting witness home and had stayed with her for about two hours. Both the appellant and the prosecuting witness agree that the appellant owed her money which had not been paid as of time for trial, and that she had come by where he worked, and called, and had left messages. However, the prosecuting witness testified that the money was a $500 loan she had given the appellant in January 1979 to be used for the purchase of marijuana. He denied this, testifying that the amount was $600, and it was promised to her in return for her performance of sexual acts with him at his apartment while Tyler, his roommate, stood behind the door and watched, and for her making an obscene telephone call to Tyler. The prosecuting witness denies ever having sexual relations with appellant prior to the incidents of March 10 and 11, 1980, when she was forced at gunpoint.

Both agree that they were together in her car the night of March 10 and early morning hours of March 11 for the purpose of collecting the money. However, the prosecuting witness testified that the appellant, after several hours drive, forced her at gunpoint to perform fellatio on the appellant on three separate occasions, and forcibly penetrated her vagina with his fingers. The appellant gave uncorroborated testimony that earlier that evening the prosecuting witness had told him that if he did not pay her the money she would find some way to send him to the penitentiary. The appellant neither admitted nor denied having any sort of sexual contact with the prosecuting witness on the night in question.

The appellant's attorney stated that the defense was not one of consent, but that Tyler's testimony was necessary to show bias or ulterior motive. However, the defense attorney also stated that Tyler had no knowledge of the debt or the obscene telephone calls; neither was there a contention that

Tyler was present at the time of the alleged threat to send the appellant to the penitentiary if he did not pay.

The crucial part of this trial came about by reason of appellant filing a motion to allow testimony concerning the prosecuting witness's previous sexual conduct. A hearing was conducted on October 29 at which the appellant proffered testimony about prior sexual conduct and further alleged that one Tommy Tyler had observed her having sex with him. An omnibus hearing was set for November 3, 1980, to be held immediately before a jury trial. Witness Tyler was not present, and the court granted a continuance until November 10, 1980. On that date the motion concerning the prior sexual conduct was again brought up. Tyler testified that he had seen the appellant and a woman with frizzy blonde hair performing sexual acts in the appellant's apartment while he stood behind the door and watched. However, he was uncertain as to the date of this incident, had no knowledge of an obscene telephone call, and he stated that the woman he had observed was not present in the courtroom. The record reflects that the prosecuting witness was ten feet from Tyler at the time.

The prosecuting witness testified that her hair had never been either blonde or frizzy.

The defense attorney admitted that Tyler had no knowledge of the debt as evidenced by the following statement:

> Well, Your Honor, we are not saying that he had any knowledge, that Tommy Tyler had any knowledge of the debt for the sexual appearances and phone calls.

There certainly was no allegation that Tyler had been present the night of the rape, either at the place where the alleged threat to have the appellant put in the penitentiary if he did not pay or in the car where the rape occurred. The court ruled that the testimony of witness Tyler was not relevant and refused to allow him to testify about the prosecuting witness's previous sexual conduct. No interloc-

utory appeal was requested or taken. The case proceeded to trial on that date.

The trial court is vested with a great deal of discretion in ruling whether prior sexual conduct of a prosecuting witness is relevant, and we do not overturn its decision unless it was clearly erroneous. *Houston* v. *State*, 266 Ark. 257, 582 S.W. 2d 958 (1979).

Appellant bases his defense upon the case of *Marion v. State*, 267 Ark. 345, 590 S.W. 2d 288 (1979). In *Marion* we stated:

> . . . Certainly, upon sufficient proffer as here, the victim's bias, prejudice or ulterior motive for filing the charge is relevant or germane to the question of whether the alleged act of sexual intercourse actually occurred and the probative value outweighs its inflammatory or prejudicial nature. . . .

In *Marion* the appellant's contention was that no sexual intercourse occurred, that the charge was brought by the prosecuting witness following a fight during which he had accused her of giving him a venereal disease. In the present case there is no argument by the appellant that sexual contact did or did not occur on the date of the charge. Since appellant does not admit having deviate sexual activity with the prosecuting witness on March 10, 1980, prior sexual acts would not be relevant. This is true even if the probative value outweighs the inflammatory or prejudicial nature of the testimony. In this case, prior sexual conduct is simply not in issue.

The provisions of Ark. Stat. Ann. § 41-1810.1 (Repl. 1977) prohibit such evidence as is attempted to be offered here from being offered either through direct or cross-examination for the purpose of attacking the credibility of the victim or to prove consent or any other defense or for any other purpose. However, the above statute is slightly modified by Ark. Stat. Ann. § 41-1810.2 (Repl. 1977) which states the procedure for allowing such evidence. This provision of the act provides that evidence directly pertaining to the act

upon which the prosecution is based or evidence of the victim's prior sexual conduct with the defendant or any other person may be admitted at the trial if the relevancy of such evidence is determined by the court in an in camera hearing.

In order to introduce such evidence the accused must file a written motion stating that he has an offer of relevant evidence of the victim's prior sexual conduct and the purpose for which the evidence is believed relevant. The statute requires a hearing on this motion no later than three days before the commencement of the trial or at such other times as the court for good cause may permit. This provision also provides that the court make a determination of whether the proof is relevant to a fact in issue and whether its probative value outweighs its inflammatory or prejudicial nature. In such case the court is required to make a written order stating what evidence, if any, may be introduced by the defendant and the nature of the questions to be permitted. Section (c) of Ark. Stat. Ann. § 41-1810.2 provides that the prosecuting attorney may take an interlocutory appeal on behalf of the state in any adverse ruling and that the defense may likewise appeal such court order if it deems the order to be prejudicial. Specifically, the statute requires further proceedings to be stayed pending determination of the appeal. Sexual conduct is defined in Ark. Stat. Ann. § 41-1810.3 and clearly includes the activity in question here.

There is no allegation that the excluded testimony would shed any light whatsoever on the bias or prejudice of the prosecuting witness. Since it is not disputed that sexual conduct occurred on March 10, 1980, the language in *Marion* v. *State,* supra, is inapplicable. We held in *Marion* that the reputation of the prosecuting witness as a prostitute, or that she had two illegitimate children, was not relevant to the central fact in issue.

We have upheld the rape shield statute in *Duncan* v. *State,* 263 Ark. 242, 565 S.W. 2d 1 (1978); *Bobo & Forrest* v. *State,* 267 Ark. 1, 289 S.W. 2d 5 (1979); *Marion* v. *State,* supra; *Dorn* v. *State,* 267 Ark. 365, 590 S.W. 2d 297 (1979); *Kemp* v. *State,* 270 Ark. 835, 606 S.W. 2d 573 (1980); *Boreck* v. *State,*

272 Ark. 240, 613 S.W. 2d 96 (1981). The consensus ruling of the foregoing cases is to the effect that all prior acts of sexual conduct are inadmissible unless they come within the exceptions of the rape shield act. Before such acts may be presented in evidence the court must find that the probative value outweighs its inflammatory and prejudicial nature. This determination is made by the trial court prior to the trial in chief. At such hearing the accused may present all facts he deems relevant and proper.

If the appellant were to be allowed to circumvent the rape shield statute by the mere allegation that the prosecuting witness brought the charges through bias or prejudice, the statute may as well be stricken from the book. The mere allegation of bias and ulterior motive to permit the introduction of prior sexual conduct on the part of the prosecuting witness would most likely cause such allegation to be included in the defense of every rape charge. The trial court ruled the proffered testimony inadmissible. Certainly, from the record we cannot say that the ruling by the trial court was clearly erroneous.

Affirmed.

GEORGE ROSE SMITH, J., concurs.

HICKMAN and HAYS, JJ., dissent.

GEORGE ROSE SMITH, Justice, concurring. Although I agree with the dissenting justice's view that Tyler's inability to identify the prosecutrix in the courtroom did not render his testimony inadmissible, I think it was inadmissible for a different reason — that its relevancy was outweighed by its prejudicial effect. At the trial defense counsel stated positively that consent by the prosecutrix was not an issue; so the rape shield statute would ordinarily have excluded a bare statement even by Manees that he and the prosecutrix had sex on an earlier occasion. But the defense offered the prior sexual incident to show that the prosecutrix concocted the rape charge against Manees out of bias, because he owed her money for sexual favors. Cf. Marion v. State, 267 Ark. 345, 590 S.W. 2d 288 (1979), where the defense was that the

prosecutrix had concocted the charge because Marion had accused her of infecting him with a venereal disease. In the case at hand Tyler admittedly knew nothing whatever about the possibility that the prosecutrix may have been motivated by bias in bringing the charge against Manees. Hence Tyler could not testify to the one fact that was essential to the admissibility of Manees's own testimony about the earlier incident. Tyler's testimony about having witnessed the earlier incident would therefore have been prejudicial to the character of the prosecutrix with only scant counterbalancing relevancy favoring its admissibility.

STEELE HAYS, Justice, dissenting. I disagree with the majority view. The application of the Arkansas Rape Shield Statute is *not* the issue. At pretrial hearing the trial court held that the appellant could testify to alleged prior sexual conduct by the prosecutrix. As the majority opinion observes, the trial court is vested with wide discretion in ruling whether allegations of prior sexual conduct by a prosecuting witness are relevant, and we do not overturn its decision unless it was clearly erroneous. *Houston* v. *State*, 266 Ark. 257, 582 S.W. 2d 958 (1979).

At trial the appellant was allowed to testify to the *identical* sexual acts between himself and the prosecutrix that Tommy Tyler claimed to have witnessed but was precluded from corroborating. Relying on the bias or ulterior motive exception to the Rape Shield Statute, first recognized in *Marion* v. *State*, 267 Ark. 345, 590 S.W. 2d 288 (1979), the trial judge ruled the appellant's testimony of prior sexual acts was relevant and its probative value outweighed its inflammatory or prejudicial nature. The proffered testimony of Tommy Tyler corroborated the defendant's testimony and added no additional evidence whatsoever, certainly nothing of an inflammatory or prejudicial nature. Admittedly, Tyler's failure to identify the prosecutrix in chambers cast doubt upon his credibility, but that issue was for the *jury* to weigh and decide. It had been more than a year and a half since the witness had seen the prosecutrix according to his testimony and there was testimony that her hair style and coloring had changed. Issues of *credibility* are to be resolved by the jury having the

benefit of direct and cross examination and not by the trial judge in chambers. Identification of persons, whether an accused or another witness, involves considerations of time, changed appearance, recollection, previous acquaintance, duration of the association and numerous other aspects. But these considerations affect the *weight* of the evidence, not its *admissibility*. *Warren* v. *State*, 272 Ark. 231, 613 S.W. 2d 97 (1981); *U.S.* v. *Evans*, 484 F. 2d 1178, 1181-1182 (2d Cir. 1973); *Auerbach* v. *United States*, 136 F. 2d 882 (6th Cir. 1943).

In this context, Professor Morgan explains the test of admissibility as follows:

> The court may not refuse to permit a witness to testify that he perceived a material matter merely because the court believes the witness to be obviously mistaken or obviously falsifying. It is only when no reasonable trier of fact could believe that the witness perceived what he claims to have perceived that the court may reject the testimony. Not improbability but impossibility is the test. . . . [w]here he swears that he has personal knowledge of a matter which is merely very unlikely that he was a percipient witness, his testimony will stand and may be credited by the trier. . . . E. Morgan, *Basic Problems of Evidence*, pp. 59-60 (4th ed. 1961), *quoted in* 3 Weinstein, *Evidence* 602[02] (1981).

This record reflects a patent inconsistency in the rulings of the trial court: Under the Arkansas Rape Shield Statute, the trial judge found the same prior sexual act to be *relevant* and admissible as to the testimony of the defendant and *irrelevant* as to his only corroborating witness, based solely on the answer of the witness that he didn't see the prosecutrix in chambers when in fact she was one of two women present.

When prior sexual acts are found to be relevant and admissible under the Rape Shield Statute, that relevance extends to all witnesses to such acts, and the witness's credibility is to be determined by the jury. Unless the testimony of other witnesses to the alleged prior sexual acts would be unduly inflammatory or prejudicial, it should be

received. Tyler's testimony should not have been excluded simply because his identification was doubtful. The fact that it was deprived the defendant of the opportunity to offer material evidence which the jury might have believed.

I would reverse.

Justice HICKMAN joins in this dissent.