**Herbert J. MACKLIN, Appellant,**

**v.**

**UNITED STATES of America,
Appellee.**

**No. 21377.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 22, 1969.

Decided Feb. 18, 1969.

Mr. Charles H. Helein, Washington, D. C., with whom Mr. Calvin H. Milans, Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Daniel E. Toomey, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT, LEVENTHAL and ROBINSON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

Appellant was tried and convicted of robbery (22 D.C.CODE § 2901 (1967)), receiving a sentence under the Youth Corrections Act to run concurrently with a sentence he was already serving for another crime. On appeal he raises several issues which, after careful examination of the facts, we find to be without merit. Accordingly we affirm his conviction.

At about 11:00 P.M. on July 9, 1966, a liquor store delivery man, Ronald Carthens, was riding his bicycle to make a delivery of liquor and beer to an apartment in Southeast Washington. In front of the apartment house he was approached by a man who asked him if he had a delivery for that address. Then a second person approached him from behind, putting a hard object in his back and stating: "This is a holdup." The men took the liquor and beer, and also removed several dollars in change from Carthens' pockets and some bills from his wallet. They then fled. Carthens had a good look at the man who asked him about the delivery, the scene being illuminated by a nearby street light. That man was wearing sunglasses, which he removed while talking to Carthens. Carthens never saw the second man's face. As the men fled Carthens saw that both were black, they were of markedly different heights, and neither was wearing a shirt. Carthens then went back to the liquor store to report the robbery.

On reporting of the robbery, within minutes of the crime, a police lookout was issued. Two officers parked their car next to a school playground two blocks from the scene of the robbery. In a few minutes they observed two men, appellant and one Bernard Kirkland, emerging from the playground. The men were coming through a hole in the fence around the playground; they were black, of differing heights, and naked from the waist up. As the men emerged from the fence hole they began putting on their shirts. The officers approached them and arrested them. Carthens was brought to the playground where he identified appellant as the man who had spoken to him. He could not identify the other man.

The two men were then taken to police headquarters and searched. Some bills were found on Kirkland, and $5.40 in change was found on appellant. The police also found sunglasses on appellant. Meanwhile, a search of the playground disclosed some beer and some bottles of liquor hidden under bleacher seats. Some of the beer had been consumed. The bottles of liquor bore markings from the stamp used by the liquor store for which Carthens was making the delivery. Prior to the trial Carthens viewed the two men at a preliminary hearing and again identified appellant.

At the trial Carthens testified to the robbery. When asked if he could identify appellant, he replied, "I don't know." A lengthy colloquy followed, out of the jury's presence, in which Carthens told

of threats made to him by people he believed to be acting on behalf of defendant Kirkland. After receiving reassurances of protection, Carthens continued his testimony before the jury and positively identified appellant. The policemen who arrested the men testified to the circumstances, one of them noting that he had smelled alcohol on the breath of the men. The trial judge did not allow the prosecution to bring before the jury any testimony about the alleged threats, and he refused to let the prosecution produce testimony concerning Carthens' playground identification of appellant. Neither appellant nor Kirkland took the stand, and neither offered any evidence. The jury returned a verdict of guilty as to both. Kirkland is not here appealing.

Appellant raises four issues: (1) there was insufficient evidence to allow the jury to convict appellant of the robbery; (2) the money taken from appellant when he was searched should not have been admitted because there was no probable cause to make the arrest which preceded the search; (3) the testimony of Carthens at trial, in which he identified appellant, should not have been admitted because that identification was the product of unnecessarily suggestive pre-trial procedures; and (4) the case should be remanded because the trial court did not give a specific instruction on identification.

At trial counsel for appellant did ask for a judgment of acquittal, but did not object to the identification testimony or to the admission of the money and did not request an identification charge.

■ Regarding appellant's first point, it is manifest from a review of the facts that the Government had made out a case sufficient to go to the jury under the standard set out in Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).[1]

■ Similarly, we find that the police had probable cause to arrest appellant and Kirkland. The proximity, in time and space, of the two men to the scene of the crime, the similar height differential, their lack of shirts and their attempt to put their shirts on as they emerged from a hole in a fence at a playground at that late hour were "facts and circumstances known to the officer[s] warrant[ing] a prudent man in believing that the offense has been committed." Henry v. United States, 361

---

1. That standard is:
    " * * * [A] trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. * * * [I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter. * * * "
    81 U.S.App.D.C. at 392–393, 160 F.2d at 232–233. (Footnote omitted.)
    Here there was a direct eyewitness identification, circumstantial evidence of the similar appearance of appellant and Kirkland to the robbers near the robbery and within a few minutes of it, and evidence circumstantially showing that the loot was either on (the suspicious amount of change in appellant's pocket) or near (the liquor being hid in a deserted playground from which appellant was seen emerging a few minutes after the crime) appellant. This clearly was enough to go to the jury. The cases cited by appellant, Hunt v. United States, 115 U.S. App.D.C. 1, 316 F.2d 652 (1963), and Smith v. United States, 81 U.S.App.D.C. 296, 157 F.2d 705 (1946), did not involve direct eyewitness identification. Goodwin v. United States, 121 U.S.App. D.C. 9, 347 F.2d 793, cert. denied, 382 U. S. 855, 86 S.Ct. 107, 15 L.Ed.2d 93 (1965), does not support appellant's argument that somehow the money found on him must be traced to Carthens by something more than circumstantial inference. Just what type of connection appellant has in mind is hard to fathom, and the consequences of such a requirement for robberies where the only loot is money would be, to say the least, drastic.

U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed. 2d 134 (1959).

■ The identification issue presented by this case is similar to that which has arisen in a number of others. The case was tried before the decision in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). We have thus examined it in line with the criteria laid out for such cases in our *en banc* decision in Clemons v. United States, 131 U.S.App.D.C. ——, 408 F.2d 1230 (1968). The present case contains a confrontation at the playground where Carthens viewed appellant and Kirkland in the presence of the police, and a confrontation at the preliminary hearing. The trial judge admitted testimony about the latter confrontation, but carefully excluded any reference to the playground viewing. Carthens did make an in-court identification. In view of the opportunity Carthens had to see appellant at the time of the robbery, the extremely short time between the crime and the viewing at the playground in the immediate vicinity of the crime, the credible explanation of Carthens' initial reluctance to make an in-court identification, and the fact that Carthens consistently refused to make any claim that he could identify the second robber (indicating a lack of any motive, such as vengeance, to name just anyone), we do not find that the totality of the circumstances[2] surrounding the identifications in this case were unnecessarily suggestive.

■ Appellant's final point is that an instruction on identification should have been given. No such instruction was requested, and at the colloquy after the judge's charge, in which defense counsel made several points regarding the charge, defense counsel again failed to ask for such an instruction and stated they were satisfied with the charge in general. Further, this case was tried before the decision in *Stovall, supra,* and it is understandable that the issue of identification did not press itself with the force it has since acquired. In view of the sufficiency of the charge as a whole,[3] we do not find error here requiring reversal in the absence of a request for a specific identification charge.

In Salley v. United States, 122 U.S. App.D.C. 359, 353 F.2d 897 (1965), we held that it was error not to give an identification instruction, in a case where that issue was prominent, when requested. And in Gregory v. United States, 125 U.S.App.D.C. 140, 145–146, 369 F.2d 185, 190–191 (1966), we said:

"The instructions to the jury in this case were deficient. In spite of the fact that the only real issue presented by the evidence was the identification of the defendant, no charge on identification was given. * * *

"Without doubt, conviction of the wrong man is the greatest single injustice that can arise out of our system of criminal law. * * * Thus the

---

2. As we pointed out in Clemons v. United States, 133 U.S.App.D.C. ——, 408 F. 2d 1230 (1968) (*en banc*), for cases arising after the decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967 (1967), a particularized determination will be made regarding confrontations; where a pre-trial confrontation is unduly suggestive the burden shifts to the Government to show by "clear and convincing evidence" that the later in-court identification had an independent source. *Wade, supra,* 388 U.S. at 240, 87 S.Ct. 1926.

3. The judge gave the standard instructions as to the need for each element of the crime to be satisfied. Thus the jury was instructed that it must find that *"the defendant* took" property from the complainant. (Emphasis added.) Further, the judge instructed that, since there were two defendants, the jury should carefully consider the case against each. Although this type of general instruction would not meet the need for a specific identification instruction if requested, *see* text *infra,* it did help to ameliorate the lack of such an instruction in this case.

obligation to guard against this danger is obvious. An identification instruction alone will not, of course, obviate the danger. But at least it is a step in the right direction. That step should have been taken in this case. See Jones v. United States, 124 U.S. App.D.C. 83, 361 F.2d 537 (1966); Salley v. United States, 122 U.S.App. D.C. 359, 353 F.2d 897 (1965)."

■ In *Gregory* there was no record that an identification charge was requested; however, the court did not decide whether the error in not giving the charge was alone sufficient for reversal, since it reversed on other grounds. We think that now, after the Supreme Court has focused on identification problems in its 1967 *Wade-Gilbert-Stovall* trilogy, it is even more imperative that trial courts include, as a matter of routine, an identification instruction. In cases where identification is a major issue the judge should not rely on defense counsel to request so important a charge. In this regard, we note that the manual CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (1966) published by the Bar Association of the District of Columbia contains a charge on mistaken identity. A charge such as this might well be given, supplemented by observations on identification evidence as discussed in *Wade, Gilbert* and *Stovall*.

Affirmed.