HAMPTON, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77–206–CR. Argued November 7, 1979.—Decided December 4, 1979.*
(Also reported in 285 N.W.2d 868.)

For the plaintiff in error the cause was argued by *Ronald L. Brandt,* deputy state public defender, with whom on the briefs was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Nadim Sahar,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J. In this review the defendant raises three issues:

(1) Was it error to limit the testimony of an expert psychologist as to his opinion regarding the reliability of the eyewitness identification of the defendant?

(2) Was it error to refuse to give the defendant's requested identification jury instructions?

(3) Was it error to refuse to give the requested jury instruction on circumstantial evidence?

Defendant's main contention is that the trial court erred in restricting the testimony of Dr. Terrill Bruett, a psychologist called by the defense to testify regarding

the reliability of the identification of the defendant by Mrs. Bonnie Schlieve, the State's primary witness.

Mrs. Schlieve was a teller at the savings and loan that was robbed. She testified that on November 14, 1974, at approximately 10:30 a.m., four men entered the Security Savings and Loan Association's branch office located at 4534 West North Avenue, Milwaukee, Wisconsin, and demanded money. Three of the men were carrying firearms consisting of a silver handgun, a long-barreled revolver, and a sawed-off shotgun. Immediately upon entering the savings and loan, one of the men ordered everyone in the building to lie face-down on the floor. While the three armed members of the group stood guard, the unarmed member demanded that Mrs. Schlieve show him where the money was. After she had done so and had assisted in emptying three cash drawers into a gray sack, Mrs. Schlieve was also ordered to lie face-down on the floor. Within a short time thereafter the robbers fled taking with them over $3,000.

On the same day as the robbery, Mrs. Schlieve selected defendant's picture from among forty photographs that the police had asked her to examine. She stated that the photograph of the defendant resembled one of the men involved in the robbery, but that she couldn't be certain without seeing him in person. The following day, at the Police Administration Building, Mrs. Schlieve picked the defendant out of a police line-up and positively identified him as one of the four men who had robbed Security Savings and Loan.

She again positively identified the defendant at trial. She testified that during the robbery defendant had been as close as two feet away from her and that she had directly observed him for a period of approximately one minute. She further stated that he was wearing a dark hat and coat, and was carrying a long-barreled gun.

None of the other persons who were present during the robbery were able to identify the defendant. They had all lain face-down on the floor throughout the time the robbers were present.

The State also introduced into evidence two cannisters of film taken during the hold-up by two 35 mm. surveillance cameras which were activated when the money was forcibly removed from the drawers. A collection of still photos which were blow-ups of some of the frames of this film were received into evidence along with it. These photos show all four subjects actively engaged in robbing the savings and loan. Although even defendant concedes that one of the men depicted in these photos resembles him, he argues that the hat and glasses this man is wearing and his turned-up collar cover some of his facial features and make a positive identification on the basis of the photos alone impossible.

Thus, in defendant's view, Mrs. Schlieve's testimony was the only evidence connecting him to the offense with which he was charged. For this reason the defense sought primarily to impeach her testimony. Defendant also attempted to establish an alibi by claiming that he was asleep at his mother's house on the morning of the robbery.

As part of its effort to impeach Mrs. Schlieve, the defense called as an expert witness Dr. Terrill Bruett. Dr. Bruett had a masters degree in clinical psychology. He was employed by the Milwaukee Public School System and also maintained a private practice as a psychologist.

The defense proposed to have Dr. Bruett testify and enumerate the approximately sixteen different factors which psychologists have recognized as having an effect on the reliability of eyewitness identifications. Dr. Bruett was to first list these factors for the jury and then apply them to the specific circumstances under which Mrs. Schlieve testified that she had observed defendant at Security Savings and Loan and at the subse-

quent police line-up. In his offer of proof, defense counsel stated that, if so allowed, Dr. Bruett would testify as to the particular factors which would have influenced Mrs. Schlieve's observation of the defendant and which tended to render her testimony regarding those observations unreliable.

In response to a motion by the State brought before trial, the trial court ruled that defendant's expert witness would be limited in his testimony to simply listing the different factors affecting human perception, but would not be allowed to give an opinion as to the reliability of the specific identification of the defendant by Mrs. Schlieve. The court also ruled that the State would be allowed to cross-examine defendant's expert witness generally regarding those factors and their actual operation, but that it could not introduce rebuttal testimony in the nature of the several successful identifications Mrs. Schlieve had made on prior occasions under substantially similar circumstances, unless Dr. Bruett became specific in his testimony and gave his opinion as to the reliability of her identification of defendant.

The defendant contends that the trial court erred in its ruling and that Dr. Bruett should have been allowed to give his opinion as to the reliability of Mrs. Schlieve's testimony. His opinion, defendant argues, was admissible under sec. 907.02, Stats.,[1] and the trial court's exclusion of it so restricted the defense as to deprive defendant of his right to a fair trial and due process of law.

Certainly the ability of a witness to accurately perceive persons, objects and events, and then to correctly recall and relate those perceptions at trial is relevant to

[1] "Testimony by experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

the credibility of that witness' testimony. False and damaging testimony can be the product of witnesses unable to perceive correctly no less than witnesses who are merely unwilling to testify truthfully. For that reason this court has on more than one occasion held that the mental capacity of a witness can properly be considered as bearing on his credibility. *Sturdevant v. State,* 49 Wis.2d 142, 147, 181 N.W.2d 523, 44 A.L.R.3d 1196 (1970) ; *Chapin v. State,* 78 Wis.2d 346, 353, 254 N.W.2d 286 (1977) ; *Johnson v. State,* 75 Wis.2d 344, 360, 249 N.W.2d 593 (1977) ; *Desjarlais v. State,* 73 Wis.2d 480, 501, 243 N.W.2d 453 (1976).

In pursuing this line of attack a defendant need not be limited to evidence which he is able to elicit from the witness on cross-examination. In *Schleiss v. State,* 71 Wis. 733, 745, 239 N.W.2d 68 (1976), we stated that expert psychiatric testimony bearing on the credibility of a prosecution witness could be received in a proper case, provided an adequate foundation for the expert's opinion exists. We also emphasized in *Schleiss,* however, that whether such testimony should be received in a particular case rested with the trial court's discretion.

The reasons for our reluctance to permit the introduction of expert psychologic testimony for impeachment purposes in cases such as this, and for leaving the decision of whether or not to allow such testimony within the sound discretion of the trial court, were stated clearly and persuasively by the Ninth Circuit Court of Appeals in the case of *United States v. Barnard,* (9th Cir. 1973). 490 F.2d 907, cert. denied, 416 U.S. 959 (1974). In that case the defendants sought to place into evidence the opinions of a psychiatrist and a psychologist as to the competency and reliability of the chief witness for the prosecution. Each of the experts had based his opinion upon the record of the witness' army psychiatric evalua-

tion, the transcript of his testimony before the grand jury and their own observations of him as he testified in court.

The Ninth Circuit rejected the defendant's contention that the trial court had erred in excluding the expert testimony in language we find very much applicable here:

"As we have seen, competency is for the judge, not the jury. Credibility, however, is for the jury—the jury is the lie detector in the courtroom. Judges frequently instruct juries about factors that the jury may or should consider in weighing the veracity of a witness. In this respect it can be said that judges assume that they have certain expertise in the matter, and that juries have less of that expertise than judges. It is now suggested that psychiatrists and psychologists have more of this expertise than either judges or juries, and that their opinions can be of value to both judges and juries in determining the veracity of witnesses. Perhaps. The effect of receiving such testimony, however, may be two-fold: first, it may cause juries to surrender their own common sense in weighing testimony; second, it may produce a trial within a trial on what is a collateral but still an important matter. For these reasons we, like other courts that have considered the matter, are unwilling to say that when such testimony is offered, the judge must admit it. *See* United States v. Rosenberg, S.D.N.Y., 1952, 108 F. Supp. 798, 806, aff'd, 2 Cir., 1952, 200 F.2d 666; United States v. Daileda, M.D. Pa., 1964, 229 F. Supp. 148, 153–154.

"The admissibility of the proffered testimony was for the judge, and in deciding whether to admit expert testimony, 'the trial judge has broad discretion . . . and his action is to be sustained unless manifestly erroneous.' Salem v. United States Lines, 1962, 370 U.S. 31, 35, 82 S. Ct. 1119, 1122, 8 L. Ed.2d. 313." *Id.*, 490 F.2d at 912–913.

We remain convinced that the decision of whether expert opinion testimony of psychologists and psychia-

trists is to be permitted for purposes of impeaching a witness should rest within the trial court's discretion. Thus, the issue we must decide is whether the trial court abused its discretion in limiting Dr. Bruett's testimony.

With respect to this issue, we recently stated in *State v. Wollman*, 86 Wis.2d 459, 464, 273 N.W.2d 225 (1979), that "[t]he question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." "This court will uphold that exercise of discretion unless the circumstances show that the ruling was manifestly wrong and an abuse of discretion." *La Barge v. State*, 74 Wis.2d 327, 341, 246 N.W.2d 794 (1976).

In the case before us we find no evidence that the trial court abused its discretion in its ruling on the admissibility of the proffered expert testimony. In reaching this conclusion we first note that defendant was not prevented from introducing the psychologic testimony. Dr. Bruett was permitted to, and did in fact, testify regarding those factors which he believed could influence eyewitness identifications. The trial court merely prevented him from applying those factors to the concrete circumstances of this case and from stating to the jury his own opinion as to the reliability of Mrs. Schlieve's identification of the defendant.

Limiting expert testimony in this manner is not an abuse of discretion; further it is expressly recommended by the Federal Advisory Committee in its Note to Rule 702 of the Federal Rules of Evidence (sec. 907.02, Stats.) as a proper use of expert testimony where circumstances permit. In commenting on the rule, the committee stated:

"Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts. Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in nonopinion form when counsel believes the trier can itself draw the requisite inference." 59 Wis.2d R207–208.

This is precisely what the trial court did here. It allowed defendant's expert to inform the jury of the psychological principles underlying human observation and perception, but left to the jury itself the task of applying those principles to the specific facts of this case. Assuming that some expert testimony should have been permitted, we believe that the limitations placed upon that testimony by the trial court were entirely proper. In ruling as it did the trial court made available to the jury the scientific information which, in defendant's view, was necessary for the determination of the issue of Mrs. Schlieve's credibility, but also insured that, in making that determination, the jury would not surrender its role to determine the credibility of the witnesses and the weight to be given the testimony of each witness.

The record clearly shows that before ruling on this issue, the trial court listened to and considered the arguments of both parties. The ruling itself amply demonstrates that the trial judge gave careful consideration to the competing interests involved in the issue and attempted to evenly balance those interests against each other in resolving the question before him. The balance finally struck by the trial court shows no abuse of discretion.

It should also be noted that the circumstances in which defendant sought to use expert psychologic testimony in

this case are significantly different from those where it has been permitted in other cases. Although the majority of courts allow psychiatric testimony for impeachment purposes, the use of such testimony is generally limited to those cases where the witness whose credibility is in issue suffers from some physical or psychological disorder or defect which could interfere with his perceptual faculties or his ability to tell the truth. Because laymen are usually unfamiliar with such disorders, expert testimony can often assist the jury in determining what weight, if any, it should apportion to the testimony of such a witness.

Where the basis for the challenge of the witness' credibility is not a physical or psychological disorder, however, the need for expert testimony is not recognized. An annotation on the subject of expert psychiatric testimony for impeachment purposes states the general rule as follows:

"Generally, expert testimony as to credibility of a witness is admissible if the subject matter involves organic or mental disorders. This includes testimony concerning insanity and other forms of mental derangement, such as hysteria, delusions, hallucinations, nymphomania, sexual psychopathy, and retrograde amnesia, and testimony concerning physical maladies or habits, especially drug addiction, which tend to impair mental or physical faculties. If, however, the characteristic attacked does not involve some organic or mental disorder, or some impairment of the mental or physical faculties by injury, disease, or habit, expert testimony is usually excluded." 20 A.L.R.3d 684, 688, 689 (1968).

In the case now before us there is no contention that Mrs. Schlieve suffered from some organic or mental disorder which could interfere with her ability to correctly perceive or recall an event. Defendant attacks her credibility as a witness not because she personally was unable to correctly observe the events in question, but

because all people are unable to correctly observe under such circumstances. The basis of defendant's attack is the fallibility of human perception in general, not Mrs. Schlieve's perception in particular.

Although this court has not confronted the question of the use of expert testimony in precisely this context, courts from other states in which the issue has arisen have generally concluded that the trial court need not permit it.[2] The use of expert testimony in circumstances such as those present here could not only lengthen the time and increase the cost of trials, but it could also divert the minds of the jurors from the true issues in the case or cause them to abdicate their role as the "lie detector" in the courtroom.

Furthermore, where the supposedly mistaken identity is claimed to have resulted from facts which similarly affect all persons' ability to accurately perceive, rather than a certain defect or disability from which a particular witness is claimed to suffer, the need for expert testimony would seem to diminish significantly. All people, including those serving on a jury, recognize at least to some extent the difficulties involved in attempting to accurately perceive and remember events in stressful situations. For these reasons, then, we are unable to say that the trial court abused its discretion in limiting the expert testimony of the psychologist offered in this case.

The defendant also contends that the trial court abused its discretion in refusing to submit to the jury the special instruction requested by him on the issue of identification. The special instruction requested by defendant was patterned after a detailed identification instruction

[2] *See State v. Lewisohn,* 379 A.2d 1192 (Me. 1977); *Jones v. State,* 232 Ga. 762, 208 S.E.2d 850 (1974); *People v. Johnson,* 38 Cal. App.3d 1, 112 Cal. Rptr. 834 (1974); *People v. Guzman,* 47 Cal. App.3d 380, 121 Cal. Rptr. 69 (1975).

which has been adopted by several circuits of the United States Court of Appeals under their supervisory powers.[3] In addition to calling the jury's attention to the significance of the identification issue, the instruction sets out several inquiries which are intended to aid the jury in appraising the identification testimony of a witness. It also defines "identification testimony" as "an expression of belief or impression by the witness" the value of which depends upon "the opportunity the witness had to observe the offender and to make a reliable identification later."

Rather than submitting this instruction, the trial court gave the standard jury instruction on identification found in Wis J I—Criminal, Part I, 141. As modified by the trial court, that instruction was given as follows:

"The identification of the defendant is an issue in this case and if you find that the crime alleged was actually committed, before you may find the defendant, Silas Hampton, guilty of this offense, you must be satisfied beyond a reasonable doubt that the defendant, Silas Hampton, is one of the persons who actually committed this offense."

The jury was also instructed that the State had the burden of proving all the elements of the crime beyond a reasonable doubt, that it should scrutinize all evidence with the utmost care and caution and that it was the jury's duty to scrutinize and weigh the testimony of all witnesses and to determine the effect of the evidence as a whole.

Despite these instructions, however, defendant claims that the trial court failed to adequately apprise the jury of the dangers of identification testimony. Where, as here, substantially the whole case against the defendant

[3] See United States v. Telfaire, (D.C. Cir. 1972), 469 F.2d 552; United States v. Barber (3d Cir. 1971), 442 F.2d 517; United States v. Hodges (7th Cir. 1975). 515 F.2d 650; United States v. Holley (4th Cir. 1974), 502 F.2d 273.

rests upon identification testimony, defendant contends, the refusal to submit a special instruction constitutes an abuse of discretion for which a new trial should be awarded.

In two recent decisions on this question we have rejected this same argument. In *Chapman v. State*, 69 Wis.2d 581, 230 N.W.2d 824 (1975), we upheld a trial court's refusal to instruct the jury that identification evidence was essentially opinion evidence to be scrutinized with extreme care and to be treated with utmost caution. Instead the trial court gave the standard instruction on identification, credibility of witnesses and presumption of innocence. This court stated that the requested instructions were redundant and that the standard instructions sufficiently and adequately informed the jury of the possibility of human error and the need to scrutinize carefully all testimony given, including identification testimony. *Id.*, 69 Wis.2d at 586.

More recently in *State v. Williamson*, 84 Wis.2d 370, 267 N.W.2d 337 (1978), we upheld a trial court's refusal to use instructions that were substantially the same as those proposed here. The trial court instead gave the standard instruction on eyewitness identification. The requested instructions in that case, like those here, were based upon instructions that had been recommended by federal courts for use in cases which turn on the identification testimony of a single witness. This court refused to find error in the trial courts' rejection of those instructions, even though at least some of them correctly stated Wisconsin law:

"... we have very recently held that 'A trial court has wide discretion as to instructions. [Citation omitted.] If the instructions of the [trial] court adequately cover the law applicable to the facts, this court will not find error in the refusal of special instructions even though the refused instructions themselves would not be erroneous.'

*State v. Lenarchick,* 74 Wis.2d 425, 455, 247 N.W.2d 80 (1976)." *Id.,* at 393.

A trial court's rejection of a requested identification instruction was also upheld in *Johns v. State,* 14 Wis.2d 119, 109 N.W.2d 490 (1961). In light of our decision in these cases we are unable to accept defendant's contention that the trial court abused its discretion in refusing to submit the requested instructions.

Lastly, defendant assigns error to the trial court's refusal to instruct the jury on circumstantial evidence. The basis for this request was evidence that the defendant had purchased an automobile for $800 on the day of the robbery. Because defendant was unemployed at this time, his possession of that amount of money immediately following the offense constitutes circumstantial evidence that he was involved. *State v. Heidelbach,* 49 Wis.2d 350, 182 N.W.2d 497 (1971).

The rule applicable to this issue is that the trial court must submit the requested instruction as to circumstantial evidence when the state relies wholly or substantially upon such evidence. *Zdiarstek v. State,* 53 Wis.2d 420, 429, 192 N.W.2d 833 (1972); *State v. Isham,* 70 Wis.2d 718, 732, 235 N.W.2d 506 (1975); *Anderson v. State,* 133 Wis. 601, 613, 114 N.W. 112 (1907). In *State v. Isham, supra,* as here, the State's case consisted of eye-witness identification and circumstantial evidence. This court upheld the trial court's refusal to submit an instruction as to circumstantial evidence, stating that "[t]he basic issue went to identification, and rested on direct testimony." *Id.,* 70 Wis.2d at 732.

This is true here even more than in that case. The State's case against the defendant was based almost en-

tirely on the identification of him as one of the robbers by Mrs. Schlieve. None of the other evidence presented by the state connected him to the robbery. That the State did not rely substantially on the evidence of defendant's purchase of the automobile is clear from the fact that it did not even present that evidence in its case in chief. That information first came to the attention of the jury through the testimony of the defendant himself on cross-examination. It is doubtful that the prosecutor would have rested his case and gambled that the defendant would so testify on cross-examination if he intended to rely wholly or even substantially upon it. Whatever reliance the State did place upon that evidence was certainly not such as to require the trial court to submit an instruction on it.

*By the Court.*—Judgment and order affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I agree with the majority that the trial court's refusal to give the identification instruction offered by the defendant does not constitute reversible error in this case, because the attention of the jury was significantly focused on the question of identity.

Nevertheless, I would urge circuit courts not to use as a model identification instruction, Wis. J I—Criminal, Part I, 141. Until the Criminal Jury Instruction Committee proposes a change, I suggest circuit court adapt for their use the following instruction set forth in *United States v. Telfaire,* 469 F.2d 552, 558, 559 (D.C. Cir. 1972), which was patterned after an instruction used in the state courts of Pennsylvania, *United States v. Barber,* 442 F.2d 517, 528 (3d Cir. 1971):

*"Model Special Instructions on Identification*

"One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing

identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

"Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

"In appraising the identification testimony of a witness, you should consider the following:

"(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

"[In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.]

"Sentence in brackets ([]) to be used only if appropriate. Instructions to be inserted or modified as appropriate to the proof and contentions."

"(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the

occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

"[You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.]

"[(3) You make take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

"(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is trustful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

"I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."

I do not propose that the *Telfaire* instruction be used verbatim. It is a model which the trial court should use with revision and adaptation to fit the evidence and contentions in the case at hand.

I recognize that the giving of instructions on identification is largely within the discretion of the trial court; that defense counsel's cross examination and summation can focus on the possibility of mistaken identification and can apprise the jury that the identification made by the witness is the underlying issue in the case; and that a number of instructions, including Instruction 141, Wis. J I—Criminal, Part I., clearly tell the jury of its duty to find beyond a reasonable doubt that the defendant was properly identified as the perpetrator of the crime.

Nevertheless, I conclude that the Wisconsin instruction is too skeletal and that the trial court must, where appropriate, give a more exacting charge to emphasize the nature of the identification issue.

A special identification instruction is needed because identification testimony is at one and the same time notably convincing and notably fallible. Within recent months, newspapers across the country reported the case of a priest who was mistakenly identified as the perpetrator of the crime. In *United States v. Telfaire*, 469 F.2d 552 (D.C. Cir. 1972), the court explained the problem of mistaken identification and the need for a special instruction when identification is a key issue as follows:

"The presumption of innocence that safeguards the common law system must be a premise that is realized in instruction and not merely a promise. In pursuance of that objective, we have pointed out the importance of and need for a special instruction on the key issue of identification, which emphasizes to the jury the need for finding that the circumstances of the identification are convincing beyond a reasonable doubt. This need was voiced in 1942 in McKenzie v. United States[6] and it has been given vitality in our opinions of recent years—following the Supreme Court's 1966 Wade-Gilbert-Stovall trilogy[7] focusing on the very real danger of mistaken identification as a threat to justice. We refer to our post-Wade opinions in Gregory[8] and Macklin.[9] These opinions sought to take into account the traditional recognition that identification testimony presents special problems of reliability[10] by stressing the importance of an identification instruction even in cases meeting the constitutional threshold of admissability.[11]

"[6] 75 U.S. App. D.C. 270, 126 F.2d 533.

"[7] United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968).

"[8] Gregory v. United States, 125 U.S. App. D.C. 140, 369 F.2d 185 (1966). *See* Salley v. United States, 122 U.S. App. D.C. 359, 353 F.2d 897 (1965).

"9 Macklin v. United States, 133 U.S. App. D.C. 139, 409 F.2d 174 (1969).

"10 E.g., P. Wall, Eye-Witness Identification in Criminal Cases 8–11 (1965); 3 Wigmore, Evidence §786(a) (Chadbourn rev. 1970) (compendium of sources).

"11 We think that now, after the Supreme Court has focused on identification problems in its 1967 *Wade-Gilbert-Stovall* trilogy, it is even more imperative that trial courts include, as a matter of routine, an identification instruction. In cases where identification is a major issue the judge should not rely on defense counsel to request so important a charge. Macklin v. United States, supra note 9, at 143, 409 F.2d at 178. The quoted language was held non-retroactive in United States v. Washington, 134 U.S. App. D.C. 135, 413 F.2d 409 (1969)."

Several federal courts of appeal have either urged or required federal district courts to use the *Telfaire* model instruction with appropriate adaptations for the particular case. In *United States v. Hodges,* 515 F.2d 650, 653 (7th Cir. 1975), the Court of Appeals for the Seventh Circuit stated "We now adopt what we labeled to be the better practice in *Napue, supra* [*United States v. Napue,* 401 F.2d 107, 112 (7th Cir. 1968)], as the required practice in this Circuit, and although it is not our intention to require that the *Telfaire* model be given verbatim, we hereby publish notice that we shall in the future view with grave concern the failure to give the substantial equivalent of such an instruction."

I believe the circuit courts of this state should be on similar "notice."