COURT OF APPEALS
DECISION
DATED AND FILED

June 15, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No.    **2020AP465-CR**

STATE OF WISCONSIN

Cir. Ct. No.  **2015CF571**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JAMES M. BURKE,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment of the circuit court for Barron County: MAUREEN D. BOYLE, Judge. *Affirmed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

        ¶1    PER CURIAM. James Burke appeals a judgment of conviction, entered upon a jury's verdict, for physical abuse of a child by intentionally causing

bodily harm. Burke argues he is entitled to a new trial because the circuit court erroneously prohibited his expert witness from testifying regarding the professional understanding of the nature of memory and research on false allegations by children. We conclude the court did not erroneously exercise its discretion when it concluded the proposed expert testimony would not assist the jury. Accordingly, we affirm.

## BACKGROUND

¶2      At trial, Burke's son, Dennis,[1] testified regarding three instances of physical abuse he had suffered when he was approximately fourteen years old and living with his father in Barron County. Dennis testified that he grew up in Tennessee and never knew Burke, his biological father, before 2013, when he moved to live with him. Dennis testified that in May 2015, he ran away from home because his father hit him and kicked him in the ribs, causing bruising. He further testified that after he ran away a second time in July 2015, Burke pushed him to the ground and started hitting and kicking him in the face and ribs, after which he dragged Dennis by the hair, put him in a chair, and shaved his head. The third incident occurred in September 2015, at the residence of one of Burke's friends. Burke told Dennis to get outside of the residence, then chased him, threw him to the ground, and started hitting him, kicking him in the face and ribs, and choking him.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we use pseudonyms to refer to the victim. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3      The defense theory at trial was that Dennis was fabricating the incidents and they could not have occurred as he described.  The State conceded during its closing argument that there were "discrepancies" between the events Dennis described at trial and other witnesses' accounts of the timing and details of those events.  The jury returned a guilty verdict, and the circuit court sentenced Burke to three years' initial confinement and three years' extended supervision.

¶4      Prior to trial, the State filed a motion in limine seeking to exclude testimony from Burke's expert witness, psychologist Hollida Wakefield. Wakefield prepared a report in which she stated she was prepared to testify regarding two areas: (1) the nature of memory generally and factors that may affect the reliability of a child's memory; and (2) research about false allegations, including those by children.  The State argued her anticipated testimony would not assist the jury because the pertinent portions of her report—regarding problems with memory recall, the desirability of independent corroboration, and the reasons adolescents tell deliberate falsehoods—were matters that were not outside the realm of the jury's ordinary understanding.

¶5      At a pretrial hearing, the circuit court addressed the admissibility of Wakefield's proffered testimony.  Burke argued Wakefield's testimony would be helpful to the jury when determining whether Dennis was making "false, deliberate allegations."  The State conceded Wakefield's testimony regarding child memory "might have some marginal relevance," but the prosecutor argued that it would not materially assist the jury because the jury could understand "that sometimes people's memories aren't all that great" and because Dennis's disclosure of the abuse occurred shortly after the events of abuse were alleged to have occurred.  The State further argued that Wakefield's testimony regarding false allegations by children was unhelpful because she offered nothing "that the

jury can't understand in assessing [Dennis's] credibility as they listen to him testify."

¶6 The circuit court granted the State's motion in limine. It noted that Dennis reported the abuse "within a fairly short time frame of that abuse occurring," suggesting there was scant opportunity for the type of "source monitoring error" Wakefield had described to occur.[2] As to Wakefield's anticipated testimony regarding false allegations, the court concluded that "whether [or] not a 15-year-old might lie, or has some motivation to falsify something, I think that that is not beyond the kin [sic] of the average juror." The court remarked that any motivation Dennis had to lie could be argued to the jury, adding that such issues were "commonly known to adults, especially those who have dealt with teenagers." The court further noted that much of Wakefield's anticipated testimony concerned research involving allegations by very small children and allegations of sexual abuse, neither of which was at issue in the present case. The court determined, however, that Wakefield could permissibly testify regarding whether suggestive or improper interview techniques had been used by police and social workers while interviewing Dennis, and their potential consequences.

¶7 At trial, the State sought to sequester the defense witnesses, including Wakefield, which led to some further discussion about Wakefield's anticipated testimony. The circuit court reaffirmed its prior ruling, stating that what Burke "wanted Ms. Wakefield to testify to was nothing that anybody sitting

---

[2] Wakefield described source monitoring error as "situations where the source of the information is recalled erroneously. The person confuses information [he or] she thought about, talked about, or fantasized about with something that actually happened."

4

on that jury wouldn't already know." The court again told Burke he could elicit testimony from Wakefield about "how an interview of a child should be conducted, and what the criteria are, and what potential negative consequences there are if the interview is not conducted in the manner that is trained or taught." At trial, Wakefield testified that she "might have a couple concerns with [the interview], but overall, it was one of the better interviews that [she had] reviewed."

¶8     Following Wakefield's testimony, Burke moved for a mistrial based "on the fact that Dr. Wakefield was precluded from testifying on … the items that I had submitted in my summary of her proposed testimony." The State opposed the motion, once again on the grounds that the proffered testimony would not be helpful to the jury. The circuit court denied the motion, reasoning:

> I'd have to agree[,] … especially after hearing all the testimony here today. There was a lot of questioning. Dates were confusing. The reports were confusing. They were not consistent with each other. And, frankly, given all of that, I don't think there was an expert needed to tell the jury that people, all people, including teenagers, certainly don't always have exact recall of everything that happens two years before. I think that's a commonsense determination that any juror can make. I don't think it's relevant only to teenagers.
>
> I think … there's been plenty of evidence put before the jury here as to whatever motivation the child has here to lie about what happened. Again, I don't think we need an expert to tell a jury that those certain motivations can exist or do exist. They've heard about them.
>
> I just don't believe any expert testimony is necessary, as I ruled previously. And I will, again, affirm my earlier Ruling.

Burke now appeals.

**DISCUSSION**

¶9      The admissibility of expert testimony is governed by WIS. STAT. § 907.02.  We recently set forth in detail the analytical framework under this statute when a party seeks to admit expert testimony.  *See State v. Bucki*, 2020 WI App 43, ¶¶23-24, 45-53, 393 Wis. 2d 434, 947 N.W.2d 152.  This case concerns one threshold aspect of admissibility, the requirement that expert testimony be helpful to the jury.[3]  *See id.*, ¶49.  Expert testimony is helpful to the jury if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Sec. 907.02(1).  "Determining whether expert testimony assists the fact finder is a discretionary decision of the circuit court."  *State v. Swope*, 2008 WI App 175, ¶16, 315 Wis. 2d 120, 762 N.W.2d 725.

¶10      As an initial matter, Burke argues that Wakefield's proposed testimony does not present a *Haseltine* problem.  *See State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984).  Under *Haseltine*, "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth."  *Id.*  Despite Burke's reassurance that Wakefield's testimony would not cross this line, we agree that the circuit court's concern in this regard was reasonable.

¶11      Burke suggests that Wakefield's discussion of research would have been helpful because "there was a marked disparity between what [Dennis] recalled, and what the other witnesses saw."  The crux of Burke's argument in this

---

[3] As noted in *State v. Jones*, 2018 WI 44, 381 Wis. 2d 284, 911 N.W.2d 97, this requirement predated the amendment of WIS. STAT. § 907.02 to bring it in line with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See Jones*, 381 Wis. 2d 284, ¶¶29-30.

regard appears to be that Wakefield's anticipated testimony "would have assisted the jury in making a determination regarding whether events actually happened as [Dennis] related, by explaining the process by which a child can reconstruct their memories so that they come to believe something which didn't happen, did happen."

¶12 In expounding upon these principles, Burke argues that Wakefield would testify neither as to whether Dennis was being truthful nor that there was "any comparison between [Dennis] and other subjects found in her researches." But these assertions on appeal are contrary to what Burke, through his counsel, argued to the circuit court. As the State notes, Burke's counsel represented to the court, among other things, that Wakefield would testify as follows:

> And [Wakefield] sets forth why [children and adolescents make false statements deliberately], and what type of grounds they do, and … her research falls right in the wheelhouse of [Dennis]. I mean, they do it to gain emotional sympathy or attention. They do it to get away from the home. They do it to gain status with peers. They do it to cover up their own behavior of delinquency. And all those specifically apply to [Dennis].

Burke's counsel added that Wakefield would testify that it would "be difficult to evaluate what [Dennis] says given the multitude of motivations he has to lie, he specifically. Because of all those motivations, all of the things that he's gone through, we've asked her to evaluate them, evaluate the evidence if they're truthful or not, and what's happened." Counsel added that he asked Wakefield to "tie [her expertise] to this case specifically."

¶13 A reasonable inference from defense counsel's statements at the motion hearing was that Wakefield would be giving an opinion that Dennis was not being truthful because he had ample motive to lie. Such an opinion invades

7

the province of the fact finder as the sole determiner of credibility. *See State v. Dobbs*, 2020 WI 64, ¶36 n.18, 392 Wis. 2d 505, 945 N.W.2d 609. As a result, the circuit court reasonably exercised its discretion by excluding such testimony. In our view, Wakefield testified at trial in the only permissible manner she could about the application of her expertise to the specific facts of this case: whether the interview was conducted in accordance with professionally accepted best practices to avoid the possibility of tainting Dennis's recollection. *See State v. Schmidt*, 2016 WI App 45, ¶¶77-80, 370 Wis. 2d 139, 884 N.W.2d 510.

¶14 Further, we cannot conclude the circuit court erroneously exercised its discretion in limiting Wakefield's testimony, even if, as Burke suggests, that testimony "was clearly delimited to only a general discussion of research into the nature of memory and false allegations of abuse, and how those two subjects may interact." Exposition testimony is permissible under WIS. STAT. § 907.02(1). *Dobbs*, 392 Wis. 2d 505, ¶42. Such testimony expounds upon general scientific or other principles and leaves the trier of fact to apply those principles to the facts. *Hampton v. State*, 92 Wis. 2d 450, 459, 285 N.W.2d 868 (1979); *see also State v. Robinson*, 146 Wis. 2d 315, 333, 335, 431 N.W.2d 165 (1988) (concluding exposition testimony about reactions of sexual assault victims was permissible to rebut defendant's attempt to "capitalize on the misconception that all sexual assault victims are emotional following the assault"). Even for exposition testimony, however, the proponent of the evidence must demonstrate to the circuit court's satisfaction, among other things, that the "testimony will address a subject matter on which the factfinder can be assisted by an expert." *Dobbs*, 392 Wis. 2d 505, ¶43.

¶15 In general, Burke accuses the circuit court and the State of oversimplifying the nature of Wakefield's proposed testimony. But Burke

provides little reason to second-guess the court's determination that a jury could ably understand any asserted lapses in witness memory or motivations for false allegations. Despite Wakefield ascribing technical names for memory errors and falsehoods, the notions that a witness's memory may not be entirely accurate or that a witness may deliberately fabricate an incident are certainly within the ambit of the ordinary juror's knowledge. Indeed, we often note that "[t]he credibility of a witness is ordinarily something a lay juror can knowledgeably determine without the help of an expert opinion." *Haseltine*, 120 Wis. 2d at 96.

¶16 Of course, that a lay witness of ordinary intelligence might understand the subject matter does not necessarily mean that the opinion of an expert in the field would not be of assistance to the trier of fact in understanding the evidence or determining a fact in issue. *State v. Watson*, 227 Wis. 2d 167, 187, 595 N.W.2d 403 (1999). But here, the circuit court expressly (and reasonably) found that Wakefield's proposed testimony was not a good fit for the case because much of it focused on research involving younger children and reports of sexual assault, not other types of physical abuse.[4] Moreover, the court reasonably determined that Wakefield's proposed testimony regarding memory was unhelpful given that only a short period of time had lapsed between the date the assaults occurred and the date they were reported to police. Finally, as set forth above, Wakefield's opinion was that, generally speaking, Dennis's interview had been conducted so as to minimize the risk of false allegations.

---

[4] On appeal, Burke provides no reason to question the circuit court's assessment of the research contained in Wakefield's report.

¶17 "Establishing the fit of exposition testimony is particularly important because, unlike opinion testimony, exposition testimony does not in and of itself explicitly connect the witness's expertise to the particular facts of the case." *Dobbs*, 392 Wis. 2d 505, ¶44. We will uphold a circuit court's exercise of discretion as long as the court applied the proper legal standard in accordance with the facts of record to reach a reasonable conclusion. *Id.*, ¶45. The court acted within the permissible boundaries of discretion here by limiting Wakefield's trial testimony.

*By the Court.*—Judgment affirmed.

This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.