STATE of Wisconsin, Plaintiff-Respondent,

v.

Eugene JOHNSON, Defendant-Appellant.

Court of Appeals

No. 83–1107–CR. *Submitted on briefs February 15 1984.—
Decided March 27 1984.*
(Also reported in 348 N.W.2d 196.)

For the defendant-appellant the cause was submitted on the briefs of *Donald T. Lang,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Kirbie Knutson,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J.    Eugene Johnson appeals from a judgment of conviction entered January 4, 1983, for robbery-strong-arm (sec. 943.32(1)(a), Stats.), following a jury trial. On appeal Johnson raises the following questions: (1) whether the trial court denied him due process by excluding expert testimony on the reliability of eyewitness identification; (2) whether the trial court's refusal to submit a proposed identification instruction deprived Johnson of his due process right to a jury instruction on a theory of defense; and (3) whether the trial court deprived him of due process by denying his

request to provide photographs of a look-alike to the jury. While we find no merit in issues one and two, we are convinced there was a violation of due process and a misuse of discretion and therefore we reverse and remand for a new trial on issue three.

This is a purse-snatching case, depending solely on identification evidence. The undisputed relevant evidence reveals the following sequence of events: On the morning of December 7, 1981, the victim was walking on the south side of Wisconsin Avenue between North 24th and 25th Streets when a man approached her, grabbed her purse and fled. She did not see his face.

Witness Jeffrey Newell observed the crime from his car. As the assailant fled, he ran across Wisconsin Avenue in front of Newell's vehicle. Newell parked his car and gave chase. Observing the man enter a home located at 804 North 25th Street, he summoned the police. A short time later Newell, accompanied by Detective Richard Wojciechowski, entered the home. Newell observed several men there, but identified none of them as the purse-snatcher. The purloined purse was later found by Detective Wojciechowski behind the home. The day following the robbery Newell selected Eugene Johnson's photograph from a five-picture photo display as that of the purse-snatcher. During the trial, he again identified Eugene Johnson as the culprit.

The defense presented three witnesses: Kathleen Johnson, Eugene's former sister-in-law; Patricia Johnson, Eugene's niece; and Detective Richard Wojciechowski.

Kathleen testified that she was residing at 804 North 25th Street on the date of the robbery and was at home when the police came to investigate. She observed the officers speak with her son, Curly Johnson, his cousin Leroy Johnson, Carta Lou Witherspoon, and Leland Johnson. She did not see Eugene at her home that morning. She further testified she had another son, Lynn

Allen Johnson, who died September 10, 1976. Patricia also testified that she did not see Eugene on the premises that morning, although she arrived there after the police.

Detective Wojciechowski testified that he interviewed a subject identifying himself as the deceased Lynn Allen Johnson who asserted that he had seen Eugene in the house that morning.

The defense also presented and the court by stipulation received into evidence photographs of William Earl Johnson, a look-alike, to support the theory of mistaken identity. William Earl is another son of Kathleen Johnson. The record indicates that the jury was not shown the picture.

Firstly, Eugene argues that he was denied his constitutional right to present a defense by the trial court's exclusion of expert testimony concerning the reliability of eyewitness identification. The defense wished to present expert testimony from Dr. Joseph Collins on the psychological aspects of memory and remembering faces and gave an offer of proof. It was not couched in terms of an expert opinion, but rather was dissertational in recounting the eight sources of witness unreliability. In denying the request, the trial court in pertinent part stated:

Dr. Collins' testimony while it would be very helpful if we were at an educational seminar is of little significance in a specific case wherein the facts have already been made clear to the jury and which clearly do not fall within the definition and lines that Dr. Collins has named . . . .

In *Hampton v. State,* 92 Wis. 2d 450, 459, 285 N.W.2d 868, 872 (1979), our supreme court quotes with approval the Federal Advisory Committee's Note to Rule 702 of the Federal Rules of Evidence (sec. 907.02, Stats.), stating:

"Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts. . . . [I]t seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in nonopinion form when counsel believes the trier can itself draw the requisite inference."

In this case, however, as the trial court stated, the evaluative factors proffered by Collins were not relevant to the evidence already presented to the jury. A careful review of the record supports the trial court's conclusion, and consequently we reject the first contention of this appeal.

Secondly, Eugene argues that the trial court's refusal to submit his proposed identification instruction deprived him of his due process right to a jury instruction on a theory of defense. The requested instruction resembled that mandated or strongly recommended in some federal circuits. *See United States v. Telfaire*, 469 F.2d 552, 558–59 (D.C. Cir. 1972) ; *United States v. Hodges*, 515 F.2d 650, 653 (7th Cir. 1975).

In Wisconsin, however, a trial court has wide discretion in giving jury instructions. *State v. Clausen*, 105 Wis. 2d 231, 240, 313 N.W.2d 819, 824 (1982). If the instruction actually given adequately covers the applicable law, there is no error in refusing to give a special instruction even if that instruction would not have been erroneous. *State v. Pruitt*, 95 Wis. 2d 69, 80–81, 289 N.W.2d 343, 348 (Ct. App. 1980).

Here, the trial court denied the requested instruction and in its stead submitted the standard identification

instruction, Wis J I—Criminal, 141. Eugene's only theory in the case was misidentification. We conclude that this theory of defense was more than adequately covered by the instructions given. Our supreme court has held that giving the standard jury instruction on eyewitness identification found in Wis J I—Criminal, 141, plus the standard instruction on credibility of the witnesses and presumption of innocence sufficiently and adequately informs the jury of the possibility of human error and the necessity to carefully scrutinize all testimony, including identification testimony. *Hampton, supra,* at 463–64, 285 N.W.2d at 874–75. For further discussion of this issue *see State v. Williamson,* 84 Wis. 2d 370, 392–93, 267 N.W.2d 337, 347–48 (1978), and the concurring opinion in *Hampton, supra,* at 465–69, 285 N.W.2d at 875–77.

Appellant's third and last contention concerns whether the trial court denied his constitutional right to present a defense by refusing to provide the jury with the look-alike photographs. The theory of defense, fairly inferred from the record, was that William Earl Johnson, not Eugene committed the crime. Eugene argues that the trial court's refusal prevented meaningful consideration of this crucial element of his theory of defense, and we agree.

Furthermore, in ruling, the trial court assigned no reason specifically addressed to the facts of the case. Nor did the prosecution object to the submission. After the jury had been instructed the following colloquy took place:

THE COURT: What is the state's position on exhibits? The court has followed the practice, that doesn't make it anything but a practice, either submitting all of them that we have been received into evidence or none of them until and unless a request is made by the jury for an exhibit at which time the court will not act on that request unless both counsel are in court and have a

chance to speak on the subject. What is your position on exhibits?

MR. SCHULZ: I have no objection if they go.

MR. BUSH: Send them all, Your Honor, . . . .

. . . .

THE COURT: . . . The question is whether we should send any or all or none.

MR. BUSH: All.

THE COURT: Until a request is received. What's the state's position?

MR. SCHULZ: On that I usually found that when they request it, then they can all go in. If they don't request it, they don't need them.

MR. BUSH: Your Honor, an extremely crucial part of our case is the family resemblance between William Earl Johnson and Eugene Johnson and I think the jury has to have that. There was no way for me to blow it up for them to look at.

THE COURT: The court will rule if there is a request that all of the exhibits will go. Is that satisfactory? I mean, I understand it isn't satisfactory to defense counsel but assuming the court's ruling correct or incorrect, is there any objection to sending all of the exhibits with the exception that we've all agreed to to [sic] the jury upon their request without further reference to counsel.

MR. SCHULZ: That's agreeable with the State.

MR. BUSH: Well, subject to my requests that they all go immediately.

THE COURT: No. I understand.

MR. BUSH: That's acceptable.

THE COURT: That's the way it will go. If there is a request from the jury panel, the court will send them in at that time.

When the verdict was received, the State moved for a judgment of conviction. Defense counsel inquired whether the exhibits including the picture of William Earl Johnson were ever submitted to the jury. The trial court replied "there was no request for any exhibits and therefore none was sent." The motion for judgment was unsuccessfully opposed.

What distinguishes this case from other appeals concerning the denial of photograph submission to the jury is that here the defendant makes the request.

Normally, whether photographs are to be sent to the jury room is a matter of the trial court's discretion. *Simpson v. State,* 83 Wis. 2d 494, 505–06, 266 N.W.2d 270, 274–75 (1978). We conclude, however, that more is at issue here than simply whether the trial court misused its discretion.

One of the essential ingredients of due process in a criminal trial is the right to a fair opportunity to defend against the State's accusations. *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973). A corollary to this principle is the right to present relevant and competent evidence. *Hughes v. Mathews,* 576 F.2d 1250, 1255–56 (7th Cir.), *cert. denied,* 439 U.S. 801 (1978). Important as these rights are, they are not absolute. They may bow to other legitimate state interests in the criminal trial process. These competing state interests, however, must be substantial to overcome the claim of the accused. *Chambers, supra,* at 295; *Hughes, supra,* at 1258.

Thus a trial court's decision on a procedural issue at trial may nominally be labeled discretionary, but the court's authority may not be exercised until it accommodates the accused's due process rights to present a defense. Without a compelling state interest, the court's ruling may not interfere with the accused's opportunity to present crucial evidence to the jury.

Here, we are confronted with a one-witness identification case. The defense of mistaken identity was supported somewhat by the testimony of a relative, an ex-relative and, primarily, by photographs of an alleged look-alike who happened to be the son of the resident of the house into which the purse-snatcher fled. For reasons not clear in the record the jury did not see the

photographs when they were introduced, by stipulation, into the record.

Other than what is recounted here Eugene had no reasonable means of defending his case. And, if the photographs did indicate to the jury what Eugene suggested, it is at least plausible that they could have provided the basis for an acquittal.

Under these circumstances, we conclude that providing the jury the opportunity to see the photographs was essential to Eugene's defense. The trial court acknowledged that the jury could have properly viewed them. Instead of presenting any substantial interest in opposition, the State agreed that any exhibit could properly have gone to the jury. The subsequent failure to submit the photographs was therefore a violation of due process.

Apart from due process considerations, we find independent grounds for reversal because of the arbitrary nature of the trial court's ruling. The only basis we can surmise for the denial of Eugene's request is the court's accustomed past practice.[1] No other reason is stated or can reasonably be inferred.

Where a decision requires the exercise of discretion but fails to demonstrate on its face consideration of any

[1] In *Hagenkord v. State*, 100 Wis. 2d 452, 464, 302 N.W.2d 421, 428 (1981), the supreme court explained:

While the trial court did not expressly articulate a rationale for the records not being given to the jury, it acquiesced in the explanation of the prosecutor that the records were lengthy, technical, and confusing to the jury because of the use of medical terms. The trial record indicates, even absent an express ruling or an articulation of reasons by the trial court, that it was these considerations posed by the prosecutor and not disputed by defense counsel that governed the trial court's determination not to send the records to the jury. It was not an abuse of discretion to fail to do so.

These circumstances, however, do not exist in this case.

factors on which the decision should be properly based, the decision constitutes a misuse of discretion as a matter of law. *Schmid v. Olsen,* 111 Wis. 2d 228, 237, 330 N.W.2d 547, 552 (1983). This court, however, is not required to reverse the discretionary decision of a trial court if it can conclude *ab initio* that there are facts of record which would support the trial court's decision had discretion been exercised on the basis of those facts. *Id.* Nor will we reverse unless the use of discretion is wholly unreasonable. *Hayzes v. State,* 64 Wis. 2d 189, 200, 218 N.W.2d 717, 723 (1974).

Here we find no facts of record supporting the ruling and cannot find any reason for the court's action beyond the unreasoned use of discretion which this court disfavors. *See State v. Martin,* 100 Wis. 2d 326, 327, 302 N.W.2d 58, 59 (Ct. App. 1981). We therefore conclude that the trial court misused its discretion in not sending the photographs to the jury.

For the reasons stated, we reverse and remand for a new trial.

*By the Court.*—Judgment reversed and cause remanded for a new trial.