191 Wis.2d 483

STATE of Wisconsin, Plaintiff–
Respondent,

v.

Edward TABOR, Defendant–Appellant.†

No. 94–0838–CR.

Court of Appeals of Wisconsin.

Submitted on Briefs Nov. 11, 1994.

Opinion Released Feb. 1, 1995.

Opinion Filed Feb. 1, 1995.

† Petition for review denied.

916

On behalf of the defendant-appellant, the cause was submitted on the briefs of Steven P. Weiss, Asst. State Public Defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of James E. Doyle, Atty. Gen. and Gregory Posner–Weber, Asst. Atty. Gen.

Before ANDERSON, P.J., and BROWN and NETTESHEIM, JJ.

ANDERSON, Presiding Judge.

Edward Tabor appeals from judgments of conviction on four counts of first-degree sexual assault of a child in violation of § 948.02(1), STATS. In this appeal he seeks the abandonment of the rule giving "greater latitude" to the admission of other crimes evidence in child sexual assault cases. Because we are an error-correcting court, we are bound by the decisions of the Wisconsin Supreme Court. It would be patently erroneous and usurpative for us to reexamine the rule of "greater latitude" and abandon it in favor of a more exacting rule governing the admissibility of other crimes evidence.

In the alternative, Tabor contends that the trial court erred in admitting a nine-year-old conviction as other crimes evidence and in denying him the opportunity to defend against the charges by barring evidence that Tabor had not sexually assaulted the victim's brother. We affirm the judgments of conviction, holding that the trial court properly exercised its discretion in admitting other crimes evidence and in preventing Tabor from presenting evidence that he had not assaulted the victim's brother.

Tabor originally faced eight counts of first-degree sexual assault of a child. The allegations of sexual abuse arose when Kyle K. told his mother, Debbie K., that he had been sexually abused by Tabor. Kyle was four years old at the time of this disclosure. Debbie stated that Kyle told her that Tabor "had put his 'pickle' which is [Kyle's] word for penis, in the butt of [Kyle], as well as in [Kyle's] mouth and between his legs." Tabor and Debbie had lived together for four years until approximately three months prior to the investigation. Debbie had two children from a previous relationship, Charlie and Kyle, and one child, Eddie, Jr., with Tabor.

During the jury trial, the trial court allowed in evidence that in 1984 Tabor was convicted of first-degree sexual assault of his nine-year-old sister to prove Tabor's motive and intent. The trial court gave a cautionary jury instruction at the time that the evidence was received. At the close of the evidence, the following instruction was given:

> Evidence has been received regarding other crimes committed by the defendant for which he is not on trial.

> Specifically, evidence has been received that the defendant had sexual contact with the genital area of his then nine year old sister in 1984. If you find that the conduct did occur, you should only consider it on the issue of motive and intent.

> . . . .

> The evidence must be approached with the highest degree of caution, and you must guard against the risk of concluding that because the defendant committed a crime of this nature in the past, he is guilty of the offense with which [he] is now charged.

The trial court also excluded evidence that Charlie, Kyle's brother, had never been sexually assaulted by Tabor.

The jury found Tabor not guilty of counts one through four of first-degree sexual assault and guilty of counts five through eight. Judgments of conviction were entered against Tabor for four counts of first-degree

sexual assault of a child. Tabor appeals from the judgments of conviction.

■ Whether the trial court properly admitted evidence of Tabor's previous conviction of sexual assault and excluded testimony of Kyle's brother that he had never been molested by Tabor are issues governed by the erroneous exercise of discretion standard. *See State v. Jones,* 151 Wis.2d 488, 492–93, 444 N.W.2d 760, 762 (Ct.App.1989). We will uphold the trial court's decision to admit Tabor's 1984 conviction and to exclude the testimony of Kyle's brother "if it is in accordance with legal standards and facts of record, if the trial court undertook a reasonable inquiry and examination of the underlying facts, and if there exists a reasonable basis for the determination." *Id.*

■ Tabor argues that Wisconsin's rule permitting the relaxed admission of other crimes evidence against a defendant in sex crimes cases should be reexamined with a view towards adopting the rule proposed by the dissent in *State v. Friedrich,* 135 Wis.2d 1, 398 N.W.2d 763 (1987). It is the law in Wisconsin that "a greater latitude of proof is to be allowed in the admission of other-acts evidence in sex crimes cases, particularly in those involving incest and indecent liberties with a minor child." *Id.* at 20, 398 N.W.2d at 771 (quoted source omitted).

The *Friedrich* dissent criticized the "greater latitude" rule, stating:

> It is a device that permits judges to circumvent the law by making it highly probable that defendants will be found guilty, not on the basis of the facts proved in the prosecution of the crime charged, but because they have allegedly been involved in sexual misconduct in the past. The rule is unworthy of a jurisdiction which seeks to do justice. It should be repudiated in toto.

*Id.* at 56, 398 N.W.2d at 787 (Heffernan, C.J., dissenting). Tabor urges this court to "scrap the relaxed rule" and in its place, use "the ordinary rule governing the use of other crimes/acts evidence in all criminal cases."

Tabor relies heavily on *Lannan v. State,* 600 N.E.2d 1334 (Ind.1992), to support his position that the greater latitude rule should

be abandoned. Tabor posits: "[T]he Supreme Court of Indiana has reversed Indiana's long-standing rule allowing for the relaxed admission of other crimes/acts evidence in sex crimes.... [T]he supreme court reviewed the history of the relaxed rule, and the policy reasons supporting the rule ... and concluded that the rule was no longer viable."

In *Lannan,* the defendant was convicted of molesting a child. The jury heard testimony from another girl who said that Lannan had molested her and testimony from the victim of other instances of molestation which were not charged. *Id.* at 1334–35 On appeal to the Indiana Supreme Court, Lannan requested the court to abandon the "depraved sexual instinct" exception under which evidence of the uncharged acts of molestation was admitted. *Id.* at 1335. The court concluded that Rule 404(b) of the Federal Rules of Evidence "provides a better basis for testing the admissibility of this sort of evidence than [Indiana's] existing caselaw provides." *Lannan,* 600 N.E.2d at 1335.

In *Lannan,* the court abandoned the rule that other acts evidence can be used to show propensity:

> [A]bandoning the depraved sexual instinct exception does not mean evidence of prior sexual misconduct will never be admitted in sex crimes prosecutions. It means only that such evidence will no longer be admitted to show action in conformity with a particular character trait. It will continue to be admitted, however, for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.

*Id.* at 1339. In analogizing inadmissible character evidence in drug convictions, the court stated: "If a high rate of recidivism cannot justify a departure from the propensity rule for drug defendants, logic dictates it does not provide justification for departure in sex offense cases." *Id.* at 1337. The court concluded by adopting the Federal Rule of Evidence 404(b) to be applied in crimes of sexual molestation against children. *Lannan,* 600 N.E.2d at 1339.

While *Lannan* contends that Wisconsin's greater latitude rule stretches "the definition of the common scheme and plan doctrine to allow prior occurrences of sexual misconduct into evidence, in effect to prove proclivity," *id.* at 1336, Indiana's abandonment of the depraved sexual instinct exception cannot support the relinquishment of Wisconsin's greater latitude rule. Unlike in *Lannan*, where evidence of other crimes was allowed to show the defendant's depraved sexual instinct (i.e., propensity to sexually molest), and a Rule 404(b) analysis was not required, Wisconsin requires that the evidence fit under one of the exceptions of § 904.04(2), STATS. Although the greater latitude rule allows for greater admissibility under the § 904.04(2) framework, it does not allow for other crimes evidence to prove a deviant character trait of the defendant. We conclude that *Lannan* is unpersuasive.

■ This court cannot undertake a revision of longstanding precedent as Tabor urges. The court of appeals is primarily an error-correcting court. *State v. Fawcett*, 145 Wis.2d 244, 253, 426 N.W.2d 91, 95 (Ct.App. 1988). We are restricted from changing existing law as announced by our supreme court. *Id.* We therefore decline to change the "greater latitude" rule.[1]

Tabor argues that his 1984 conviction should not have been admitted. He contends that the trial court failed to use the proper legal standard by allowing the evidence in to show propensity. The trial court stated: "I agree with [the] observation that this is really evidence of propensity. That's the bottomline. And we can dress it up any way we want." While the trial court gave us pause when it used the term "propensity" outside of the presence of the jury, a close reading of the record shows that the trial court did not admit the evidence to show propensity, but rather was speaking bluntly about the admis-

sibility of other crimes evidence in sex offenses against children.

Further statements made by the trial court show that while there was a threat that the evidence could be taken by the jury to show propensity, the court did not want this to occur: "I do feel there is a risk here that the jurors may be ... of the opinion that, well, he did it before and, therefore, he has done it [a]gain. And that has to be avoided." In order to prevent the jury from using the prior conviction to show propensity, the trial court gave the following jury instruction when the evidence was received:

> [E]vidence is being received that the defendant committed the crime of sexual assault of the first degree [in 1984]. This evidence should be considered only on the issues of motive and intent. You may not consider that—you may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that he acted in conformity with that trait or character with respect to the offense charged in this case.... You must not use it under any circumstances to conclude that the defendant is a bad person or that for that reason is guilty of the offense with which he is now charged.

The court gave another instruction concerning the proper use of Tabor's prior conviction at the close of the evidence. We conclude that the trial court did not admit the evidence of Tabor's 1984 conviction to show propensity.

Next, Tabor argues that "[t]he specific evidence in this case should not have been admitted even under the relaxed rule." Tabor asserts that the two instances of molestation are not similar, stating that the 1984 conviction involved the sexual assault of his nine-year-old sister, while his recent conviction involved Kyle, a boy under the age of five. In addition, Tabor asserts that with his

---

1. In the event that the Wisconsin Supreme Court decides to review the greater latitude rule, we note one possible approach is the new FED. R.EVID. 413–415. As to evidence of similar crimes in child molestation cases, FED.R.EVID. 414 reads:

   (a) In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of an-

   other offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

   Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 320935(a), 108 Stat. 2136 (1994). The effective date of FED. R.EVID. 413–415 is contingent, and the rules are subject to revision. *See* Pub.L. No. 103–322, § 320935(b)–(e).

sister he "placed his hand on [her] private parts" and the crime against Kyle involved "placing his penis in [Kyle's] mouth and legs."

■ Before being admissible, other acts evidence must pass a two-step test. "To admit evidence of a prior crime, a court must determine that the evidence is admissible under both secs. 904.04(2) and 904.03, Stats." *State v. Plymesser*, 172 Wis.2d 583, 591, 493 N.W.2d 367, 371 (1992). The first step is to determine if the evidence can be offered for one of the categories listed under § 904.04(2), STATS., which provides:

> OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Other acts evidence will not be admitted under § 904.04(2) "when the only inference that can be drawn from that evidence is that because a defendant committed prior act X, he is therefore of such a character and disposition to commit present act Y...." *Plymesser*, 172 Wis.2d at 592, 493 N.W.2d at 371 (quoted source omitted).

■ The second step of the test is to determine whether the probative value of the evidence to be admitted is substantially outweighed by the danger of unfair prejudice under § 904.03, STATS. *Plymesser*, 172 Wis.2d at 592, 493 N.W.2d at 372. "The probative value of other-acts evidence depends partially upon its nearness in time, place, and circumstance to the alleged crime or element sought to be proved." *State v. Fishnick*, 127 Wis.2d 247, 261, 378 N.W.2d 272, 280 (1985). It must be remembered that "a threshold question implicit within the two-prong analysis is whether the other-acts evidence is relevant to the case." *Id.* at 254, 378 N.W.2d at 276.

■ We conclude that the trial court correctly admitted the evidence of Tabor's 1984

conviction to prove motive and intent under § 904.04(2), STATS. The court stated that:

> [Tabor] was motivated by a desire for sexual gratification.
>
> . . . .
>
> That's the element. And this evidence is directly pertinent to that because most folks wouldn't even remotely consider it sexually gratifying to have sexual relations with a small child. And so this is directly pertinent to that point. I don't have any trouble with the admissibility of it.

We disagree with Tabor that the 1984 conviction was in no way similar to the present case. Both incidents involved a minor and arose within a familial or quasi-familial situation where Tabor was significantly older than his victims. The 1984 conviction involved Tabor's sexual assault of his nine-year-old sister. Kyle was under the age of five when the assaults occurred and Tabor had been living in a family-like situation with Kyle's mother. We agree with the trial court that the 1984 act was probative of Tabor's desire to obtain sexual gratification from children. While the type of contact was different and the two victims were of different genders, these facts alone do not render the evidence inadmissible.

■ Next, we must determine whether the probative value of the 1984 conviction is outweighed by the prejudice to Tabor. "Remoteness in time is a consideration when weighing probative value versus prejudicial effect." *Friedrich*, 135 Wis.2d at 25, 398 N.W.2d at 774. The two crimes are separated by nine years. This gap, however, does not automatically render the prior conviction inadmissible. Remoteness in time does not render the evidence per se inadmissible. *See State v. Mink*, 146 Wis.2d 1, 16, 429 N.W.2d 99, 105 (Ct.App.1988). In the present case, the circumstances surrounding the two instances were similar enough so that the distance in time did not render the 1984 conviction irrelevant. *See id.*

■ Additionally, "[t]he prejudice which must be avoided is the potential harm of a jury reaching the conclusion that because the defendant committed a bad act in the past, the defendant necessarily committed the cur-

rent crime." *Id.* at 17, 429 N.W.2d at 105. At trial, the court gave the jury instructions prior to the evidence and at the close of the evidence cautioning the jury to use the 1984 conviction solely on the issues of Tabor's motive and intent. These instructions went far to cure any adverse effect attendant with the admission of the 1984 conviction. *See Fishnick,* 127 Wis.2d at 262, 378 N.W.2d at 280. We conclude that the evidence was relevant to motive and intent and its probative value was not substantially outweighed by the danger of unfair prejudice under § 904.03, STATS.

■ Lastly, Tabor argues that the trial court denied him his constitutional right to present a defense when it excluded testimony of Charlie, Kyle's brother, that Tabor "never demonstrated any sexual urges toward him." The State counters this argument, contending that "Tabor has waived his right to challenge the correctness of the circuit court's ruling by failing to preserve the substance of the proffered testimony in an offer of proof at trial." We agree with Tabor that he did not waive this issue. It is apparent from the record that the court and the parties were aware that the substance of the evidence was that Tabor had not molested Charlie.

■ Charlie's testimony that he had not been molested was offered by Tabor to show that "[Tabor] was not a characterological child molester taking advantage of every opportunity to satisfy some uncontrollable desire." An essential ingredient of due process is the right to defend against the State's accusations. *State v. Johnson,* 118 Wis.2d 472, 479, 348 N.W.2d 196, 200 (Ct.App.1984); *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). A corollary to this principle is a defendant's right to present relevant evidence. *Johnson,* 118 Wis.2d at 479, 348 N.W.2d at 200.

We conclude that Tabor was not denied the right to present relevant evidence in his defense. Charlie's testimony was not probative of Tabor's desire for sexual gratification with children. The fact that Charlie was not·

sexually assaulted by Tabor is not relevant[2] to Tabor's motive or intent to obtain sexual gratification from Kyle, nor does it show an absence of motive. "[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *United States v. Dobbs,* 506 F.2d 445, 447 (5th Cir. 1975). *See also United States v. Winograd,* 656 F.2d 279, 284 (7th Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982); *United States v. Null,* 415 F.2d 1178, 1181 (4th Cir.1969). We conclude that the trial court did not erroneously exercise its discretion in excluding Charlie's testimony that Tabor did not display any sexual misconduct toward him.

Judgments affirmed.

NETTESHEIM, Judge (*concurring in part, dissenting in part*).

I agree with the majority's holding that the trial court properly admitted the State's other acts evidence against Tabor. However, I disagree with the majority's further holding that the trial court properly rejected Tabor's evidence offered in response to the State's other acts evidence. Therefore, I would reverse Tabor's conviction and order a new trial.

In the seminal case of *Whitty v. State,* 34 Wis.2d 278, 297, 149 N.W.2d 557, 565–66 (1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1056, 19 L.Ed.2d 1155 (1968), the Wisconsin Supreme Court cautioned that other acts evidence should be used sparingly, only when reasonably necessary, and that such evidence normally carried a calculated risk. However, as we recently noted in *State v. Johnson,* 184 Wis.2d 324, 341, 516 N.W.2d 463, 468 (Ct. App.1994), a long and steady line of cases since *Whitty* has routinely approved the State's use of such evidence. Moreover, this relaxed application of the general rule barring other acts evidence has been further relaxed in child sexual assault cases. *See, e.g., State v. Friedrich,* 135 Wis.2d 1, 19–20, 398 N.W.2d 763, 771 (1987). As a result, we have said that "*Whitty* is not the bastion it

2. "Relevant evidence" is defined by § 904.01, STATS., as "any tendency to make the existence of any fact that is of consequence to the determina- tion of the action more probable or less probable than it would be without the evidence."

once was." *Johnson*, 184 Wis.2d at 341, 516 N.W.2d at 468.

This post-*Whitty* case law has produced a new rule which flouts the other acts statute. Now, other acts evidence is routinely used against defendants for the very purpose the statute excludes it—"to prove the character of a person in order to show that the person acted in conformity therewith." Section 904.04(2), STATS. As a result, the limited exceptions of admissibility have swallowed up the general rule of exclusion. In short, the exceptions are the rule and the rule is the exception.

My separate writing here is not to lobby for or against the wisdom of this de facto dismantling of § 904.04(2), STATS. Rather, my purpose is to again urge, as we did in *Johnson*, that trial and appellate courts stop paying lip service to the statute and *Whitty* and, instead, recognize the law for what it really is. As we said in *Johnson*, "Unless or until our supreme court reverses the direction of the law in this area, we should stop writing appellate opinions which pretend to honor *Whitty* but actually offend it." *Johnson*, 184 Wis.2d at 341, 516 N.W.2d at 468.

I commend the trial court in this case for speaking with the candor I urge. The court acknowledged that the other acts evidence was admitted for nothing more than to show Tabor's character propensity to commit sexual assaults against children. However, the court then recognized that it was necessary to hammer the "square peg" of the evidence into the "round hole" of the statute. Armed with the post-*Whitty* case law, the trial court easily accomplished this task. Our affirmance of the trial court's ruling follows with similar ease.

This dissembling of *Whitty* and the statute, however, also carries its consequences when a defendant offers evidence in response to the State's other acts evidence. *See Johnson*, 184 Wis.2d at 334–42, 516 N.W.2d at 465–68. Here, the State was permitted to introduce evidence of Tabor's character propensity to sexually assault young children. To refute this evidence, Tabor sought to introduce evidence from the victim's brother that Tabor had not made any sexual advances against him. This was not a wholesale attempt by Tabor to establish that all children with whom he came in contact were not accosted by him. Rather, Tabor specifically limited this evidence to the brother, *a child who was as readily accessible to Tabor's pedophilic propensities as the victim during the same time frame as the events involving the victim.*

Resisting this evidence, the State successfully invoked the relevancy principles which underpin *Whitty* and § 904.04(2), STATS.[3] Thus, the sum of the critical and damaging evidence which the jury heard in this case was: (1) Tabor's sexual assault of the four-year-old male victim with whom he lived, and (2) Tabor's predisposition to assault young children represented by the character propensity evidence that Tabor had committed a sexual assault nine years earlier against his nine-year-old sister. Yet, the jury was not permitted to learn that Tabor's propensities did not prompt him to sexually act out against the victim's brother, a ten-year-old male with whom Tabor also lived during the same time period as the events surrounding the charged event.

In the State's rebuttal closing argument, the prosecutor stressed that Tabor's prior act and conviction demonstrated his sexual attraction to children, particularly those within the family unit: "[H]e likes to do it to family members, children that he has control over. Children that he has authority over. Children are subjected to him."

Given the State's use of the other acts evidence to stress Tabor's propensity to sexually assault children within his household and subject to his dominion and control, Tabor's evidence that he had not sexually assaulted or made sexual advances against the victim's brother was relevant. Like the victim, the brother was also a member of the family unit over whom Tabor exercised control and authority. This evidence, whether analyzed as Tabor's own other acts evidence

---

**3.** I recognize that Tabor's other acts evidence regarding the victim's brother was really negative evidence—Tabor's failure to act out sexually against the brother. Regardless, it would seem that such "nonaction" would be the most likely means of refuting propensity evidence.

under § 904.04(2), STATS., or under Tabor's constitutional right to present a defense, was a relevant and critical rejoinder to the State's other acts evidence. The trial court's ruling excluding this evidence produced a markedly uneven playing field in this trial.

If *Whitty* were still the law, none of this evidence, either from the State or Tabor, would have been admissible. In these times, all of it was admissible. If *Whitty* is to be restored to its prior stature, the supreme court must do it. I would reverse and order a new trial.